UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | |
|---|---|
| STEVEN BRIAN GAUNA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. |
| ) | 5:11-CV-00004-BG |
| ) | ECF |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**REPORT AND RECOMMENDATION**

**Statement of the Case**

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c), Plaintiff Steven Brian Gauna seeks judicial review of a decision of the Commissioner of Social Security denying his application for disability insurance benefits and supplemental security income. A United States District Judge transferred this case to the undersigned United States Magistrate Judge for further proceedings.

An Administrative Law Judge (ALJ) held a hearing on February 24, 2009, and determined on March 31, 2009, that Gauna was not disabled because he could perform jobs that existed in significant numbers in the national economy. The Appeals Council denied review on November 19, 2010. Therefore, the ALJ's decision is the Commissioner's final decision and properly before the court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 334 (5th Cir. 2005) (holding that the Commissioner's final decision "includes the Appeals Council's denial of [a claimant's] request for review").

**Factual Background**

Gauna previously worked as stocker, amusement park attendant, and telemarketer, among other jobs. (Tr. 44, 130, 148.) He claims that he became disabled on February 28, 2007, due to back pain. (Tr. 37–38, 126, 129.) At that time he was twenty-one years old. (Tr. 35.) According to Gauna, his lower back pain is continuous, lasts all day, and prevents him from lifting more than ten pounds and from sitting, standing, or walking for more than a few minutes at a time. (Tr. 138, 145–46.)

Gauna received physical therapy for lumbar pain and difficulty walking at least as early as August 2006. (Tr. 547.) In January 2007, treating physician Vudhi Slabisak, M.D., reported that x-rays of Gauna's lumbosacral spine showed spina bifida occulta and a pars defect. (Tr. 222.) Approximately one week later, Dr. Slabisak reported that an MRI of Gauna's spine showed "marrow edema consistent with discogenic back pain" at one location; a consulting physician who also reviewed the scans described the findings as "mild" and "very mild." (Tr. 198–99, 220.) According to Dr. Slabisak, Gauna had flexion and extension pain with dysrhythmia, trigger points along the lumbar paraspinal muscles, associated spasms, and decreased lumbar range of motion. (Tr. 220.)

On March 22, 2007, Dr. Slabisak stated that Gauna had a dessicating disc but that his pain was "out of proportion to his examination findings." (Tr. 215.) He encouraged Gauna to "consider learning how to live with this pain." *Id.* On April 10, 2007, Dr. Slabisak arranged for Gauna to have a discogram after noting no improvement over the previous four months. (Tr. 214.) During those four months, Gauna had undergone physical therapy, injections, and examinations by other specialists to address his back problems. (Tr. 184–86, 216–19.)

On April 26, 2007, Mohammed Tariq, M.D., performed a discogram to determine the source

of Gauna's pain. (Tr. 212–13.) Dr. Tariq reported that the test produced moderate to severe right-sided pain but did not reproduce Gauna's usual pain in his left lower back. (Tr. 213.) After reviewing Dr. Tariq's findings on May 10, 2007, Dr. Slabisak diagnosed Gauna with discogenic low back pain and stated that a dorsal column stimulator could potentially provide some relief. (Tr. 209.) Dr. Slabisak did not recommend spinal fusion for someone of Gauna's age. *Id.*

Dr. Tariq treated Gauna for his back pain until at least July 2007, when Gauna reported that he was moving to a different city for financial reasons. (Tr. 226–27.) According to Dr. Tariq, Gauna consistently reported that methadone provided partial relief but made him sleepy. (Tr. 227, 230, 234.) On June 27, 2007, Dr. Tariq stated, "The patient has [a] history of addiction [to] opioids and I am keeping a close eye on the opioid intake by the patient. There is no sign of escalating dosage pattern." (Tr. 230.) According to Dr. Tariq, Gauna would probably need a dorsal column stimulator on a long-term basis. (Tr. 227.)

After Gauna moved, he began treatment with pain specialist Rafael Justiz, M.D. (Tr. 288–91.) He also attended physical therapy. (Tr. 282–85, 362–65.) Dr. Justiz administered medication, injections, and procedures to block the medial branch and left cluneal nerves; Gauna reported that these treatments provided at most minimal relief. (Tr. 267, 269–70, 275–78, 345–46, 353, 355–56.)

In November 2008, Dr. Justiz requested insurance approval to perform a spinal cord stimulator trial for Gauna. (Tr. 326.) He listed Gauna's diagnoses as (1) chronic pain syndrome, (2) chronic low back pain, (3) lumbar radiculitis, and (4) disorder of the sacrum. *Id.* Dr. Justiz stated that the goal was to decrease Gauna's pain to a level that would allow him to seek gainful employment. *Id.* Later that month, Dr. Justiz performed a discogram, which produced concordant

pain at multiple locations and was aborted because Gauna could not tolerate the pain. (Tr. 374–76.) Dr. Justiz restricted Gauna from heavy lifting. (Tr. 373.) A post-discogram CT scan of Gauna's lumbar spine again revealed spina bifida at one location. (Tr. 378.)

On February 24, 2009, Gauna and a vocational expert testified at a hearing before the ALJ. (Tr. 33–46.) A non-attorney representative for Gauna was also present. (Tr. 35.) Gauna testified that he spent most of his time lying in bed or sitting in a recliner. (Tr. 38.) He also testified that he prepared meals for himself, did his own laundry approximately once every two weeks, and helped friends write songs at band practice for three hours once a week. (Tr. 38–39.)

In May 2009, a consulting physician reviewed an MRI of Gauna's lumbar spine and found stable degenerative disc disease with mild bilateral foraminal stenosis at one location. (Tr. 400.) The physician also reported mild right foraminal stenosis at another location. *Id.* Another physician reviewed an MRI of Gauna's knee and reported chondromalacia patella. (Tr. 444.) In August 2009, Gauna's primary care physician examined him and listed his diagnoses as hypothyroidism, chronic back pain, GERD, and degenerative disc disease. (Tr. 483.) A letter from a consulting physician indicates that Gauna was still awaiting insurance approval for a spinal cord stimulator trial as of January 2010. (Tr. 403.) Later that month, another consulting physician laproscopically removed Gauna's gallbladder due to biliary colic and biliary dyskinesia. (Tr. 414–16.)

## Standard of Review

A plaintiff is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3) (2012).

4

"In evaluating a disability claim, the Commissioner conducts a five-step sequential analysis to determine whether (1) the claimant is presently working; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantial gainful activity." *Audler v. Astrue*, 501 F.3d 446, 447–48 (5th Cir. 2007); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2012). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler*, 501 F.3d at 448. Before proceeding to steps 4 and 5, the Commissioner must assess a claimant's residual functional capacity (RFC), defined as "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a)(1), 404.1520(a)(4)(iv)-(v), 416.945(a)(1), 416.920(a)(4)(iv)-(v).

Judicial review of a decision by the Commissioner is limited to two inquiries: a court must "consider only whether the Commissioner applied the proper legal standards and whether substantial evidence in the record supports the decision to deny benefits." *Audler*, 501 F.3d at 447; 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]"). "Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990).

5

**Discussion**

Among other arguments, Gauna asserts that substantial evidence does not support the ALJ's RFC assessment because the ALJ impermissibly relied on his own lay interpretation of objective medical findings after rejecting the only available medical opinion regarding the effect that Gauna's impairments had on his ability to perform the physical requirements of light work. (Pl.'s Br. 16.) This argument has merit and requires remand. In view of the foregoing, the undersigned does not reach Gauna's remaining arguments.

Medical evidence that describes a claimant's conditions but not their effect on the claimant's ability to do work activities is insufficient to support an RFC determination. *See Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.1995). In *Ripley*, the plaintiff claimed disability due to back injury, but the ALJ concluded that he could perform sedentary work. *Ripley*, 67 F.3d at 554, 557. The available evidence in that case showed "a four year history of surgery, medical examinations, and complaints of pain." *Id.* at 557. The Court of Appeals for the Fifth Circuit held that substantial evidence did not support the ALJ's conclusion because the record included "a vast amount of medical evidence" establishing that the plaintiff had a problem with his back but did not clearly establish the effect that his condition had on his ability to work. *Id.* The court noted that medical reports discussing the extent of the plaintiff's injuries were insufficient in this regard because the court was "unable to determine the effects of [the plaintiff's] conditions . . . on his ability to perform sedentary work." *Id.* at 557 n.27.

Applying *Ripley* in a more recent case, the Court of Appeals for the Fifth Circuit held that an ALJ "impermissibly relied on his own medical opinions as to the limitations presented by 'mild to moderate stenosis' and 'posterior spurring'" to determine that a plaintiff could perform light work.

*Williams v. Astrue*, 355 F. App'x 828, 831–32 (5th Cir. 2009).  In that case, the ALJ had rejected three treating physicians' opinions that the plaintiff could perform only sedentary work. *Id.* at 831. The court stated, "Assuming that the ALJ was entitled to not give these physicians' opinions controlling weight, there is still *no* evidence supporting the ALJ's finding that [the plaintiff] can stand or walk for six hours in an eight-hour workday." *Id.*  The court reasoned that a treating physical therapist's report directly contradicted the ALJ's finding. *Id.* at 832.

In the instant case, the ALJ found that Gauna could perform light work activity that involved "lifting of not more than 20 pounds at a time with the frequent lifting of up to 10 pounds[] and standing and walking, off and on, for a total of 6 hours out of an 8-hour workday." (Tr. 29.)  The only medical reports of record that address Gauna's ability to lift, walk, and stand do not support this conclusion.

Regarding lifting ability, state agency physician James Wright, M.D., found that Gauna could occasionally lift ten pounds and frequently lift less than ten pounds.  (Tr. 255.)  After extensive testing, a physical therapist reported that Gauna could occasionally lift up to seventeen pounds and frequently lift up to nine pounds.  (Tr. 573.)  The therapist also stated that lifts over five times per day at a light physical demand level (as defined by the U.S. Department of Labor) would place Gauna "at significant medical risk." *Id.*  In addition, the therapist found that Gauna could stand or walk for only two hours in an eight-hour work day.  (Tr. 390.)  Although Dr. Wright found that Gauna could stand or walk for about six hours in an eight-hour work day (Tr. 255), the ALJ explicitly rejected his opinion in his RFC assessment.  (Tr. 30.)  Because the remaining evidence does not clearly establish the effect that Gauna's condition had on his ability to lift, stand, or walk, substantial evidence does not support the ALJ's RFC assessment. *See Ripley*, 67 F.3d at 557;

7

*Williams*, 355 F. App'x at 831–32.

## Conclusion

For the foregoing reasons, this court recommends that the United States District Court **REVERSE** the Commissioner's decision and **REMAND** this case for administrative proceedings consistent with this opinion.

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2012); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated:     January 27, 2012.

_____
NANCY M. KOENIG
United States Magistrate Judge